D. M. IPOCK v. ATLANTIC AND NORTH CAROLINA RAILROAD COMPANY AND NORFOLK SOUTHERN RAILROAD COMPANY ET AL.

(Filed 27 March, 1912.)

1. **Contracts—Voidable—Insane Persons—Defenses.**

Executed contracts of an insane person, before office found, *i. e.*, when such condition has not been formally ascertained and declared, are not void, but voidable, usually at his election or of the person appointed to act in his behalf, unless it is made to appear that the party contracting with him has acted without knowledge of the insanity or notice of such facts in reference thereto as would put a reasonably prudent man upon inquiry; and that no unfair advantage was taken, and that the consideration passed cannot be restored or adequate compensation made therefor.

2. **Same—Burden of Proof.**

While one who seeks to avoid a contract on the ground of insanity has the burden of proving his position, when it is established that the contract has been made with a person mentally incapable of making a contract, the burden is so far shifted that the agreement will be set aside unless the sane party brings himself within the requirements necessary to uphold it as a binding one.

3. **Same—Release—Damages—Evidence.**

When in defense to an action for damages it is shown that the plaintiff has accepted a voucher which by its terms purports to be a full release for a grossly inadequate consideration, that the injury was inflicted by a blow on the head resulting from defendant's negligence from which partial paralysis followed, and under these conditions, known to a great extent by the defendant, the voucher was obtained, it is sufficient to set aside the voucher as a bar to the plaintiff's recovery.

**4. Same—Judgments—Credits.**

When a voucher is set up as a defense in bar to plaintiff's recovery in his action for damages for a personal injury negligently inflicted on him, and it appears that it should be disregarded as such, but without reason to conclude that the defendant had any design or purpose to circumvent him, the action, in this regard, is in the nature of an equitable proceeding to set aside the voucher or avoid the effect of the payment received thereon, and in the absence of positive, as distinguished from constructive fraud, is subject to the maxim that he who seeks equity must do equity, and, consequently, the amount received on the voucher will be held as a credit upon a judgment which has ascertained the full amount of the damages suffered.

APPEAL from *Whedbee, J.,* at November Term, 1911, of CRAVEN.

Civil action to recover damages for personal injuries caused by alleged negligence on the part of defendant companies.

There was evidence, on part of plaintiff, tending to show that he was an employee, as section boss of the defendant companies and, on 24 August, 1908, he was seriously and permanently injured by the derailment of a hand-car he was then using in the course of the employment; the derailment being caused by a defective wheel, attributable to negligence of defendants.

The defendants denied the negligence and set up, by way of defense, a voucher, issued in plaintiff's favor, on 24 October, 1908, for $150, purporting to be in "full settlement of all claims against the railroad companies on account of the injuries; indorsed by plaintiff, making his mark, and the proceeds of which were shown to have been received and spent for plaintiff's benefit.

Plaintiff made formal reply, alleging that, at the time the voucher was issued and indorsed and at time of proceeds received and used, owing to his injuries, he was incapable, mentally, of making any binding contract affecting his interests, and was utterly unable to understand or appreciate the character of the transaction or its effect upon his rights, and offered evidence in support of his allegation. On issues submitted, the jury rendered the following verdict:

1. Did the plaintiff indorse the voucher or release introduced in evidence and marked Exhibit A? Answer: Yes, by consent of plaintiff.

2. Was the plaintiff, by reason of bodily pain, mental anguish, or mental incapacity, unable to comprehend the effect of such release indorsed by him, and was such release signed and indorsed by him without knowledge that the same was a release for his injury? Answer: Yes.

3. Did the plaintiff draw the money upon said voucher from the bank without knowledge that it was in full payment and release by him for all injuries sustained? Answer: Yes.

4. Was the plaintiff injured by the negligence of the defendant, as alleged? Answer: Yes.

5. If so, what damages has plaintiff sustained thereby? Answer: $1,500.

Judgment on the verdict for $1,500, and defendants excepted and appealed.

*D. L. Ward and Guion & Guion for plaintiff.*
*L. J. Moore for defendant.*

Hoke, J., after stating the case: There was ample evidence to support the verdict on the issues as to defendants' negligence and the amount of damages awarded, the testimony of plaintiff tending to show that, on the derailment he received a blow on the back of the head, from one of the handles of the car, rendering him unconscious at the time, causing partial paralysis of his limbs and seriously affecting his mental capacity for several months after the occurrence; one of the physicians testifying, further, that in some of the effects the injuries were likely to be permanent; and it was chiefly urged, against the validity of the recovery, that plaintiff's demand was barred by reason of the terms and effect of the voucher issued in his favor, and the use of the proceeds by him or for his benefit.

On this question, and in view of the facts in reference to plaintiff's mental condition, established by the verdict on the first and second issues, it is held with us that the executed contracts of an insane person and before office found, before such condition has been formally ascertained and declared, are voidable and not

void, and it is also recognized that such contracts are usually voidable at the election of the lunatic or person properly appointed to act in his behalf, unless it is made to appear that the other party to the agreement acted without knowledge of the insanity or notice of such facts in reference thereto as would put a reasonably prudent person upon inquiry; that no unfair advantage was taken and the consideration passed cannot be restored or adequate compensation made therefor. *West v. R. R.,* 154 N. C., 24, and *s. c.,* 151 N. C., 231; *Godwin v. Parker,* 152 N. C., 673; *Sprinkle v. Wellborn,* 140 N. C., 163; *Odom v. Riddick,* 104 N. C., 515; *Riggan v. Green,* 80 N. C., 236; *Gribben v. Maxwell,* 34 Kan., 8; *Eaton v. Eaton,* 37 N. J. L., 108; *Flack v. Gottschalk,* 88 Md., 368; *Hostler v. Beard,* 54 Ohio St., 398; Clark on Contracts, pp. 178 and 183.

The general rule which prevails under ordinary conditions in such cases is very well stated in Clark on Contracts as follows: "As a rule, a contract entered into by an insane person or person *non compos mentis* is voidable at his option, but the rule is subject to exceptions as follows:

. . . . . . . . . .

"2. In most, but not all, jurisdictions where the sane party acted fairly and in good faith, without actual or constructive knowledge of the other's insanity, and the contract has been so far executed that he cannot be placed in *statu quo.*" . . .

From the form in which this rule is here given, and the authorities applicable, we hold it to be the correct principle that, while one who seeks to avoid a contract on the ground of insanity has the burden of proving his position, when it is established that the contract has been made with a person mentally incapable of making a contract the burden is so far shifted that the agreement will be set aside unless the sane party, by proper proof, brings his case within the rule, as stated, to wit, that he acted in ignorance of conditions that no unfair advantage was taken; that the insane person is not able to restore the consideration or make adequate compensation therefor. *Sprinkle v. Wellborn, supra; Hostler v. Beard, supra;* Bigelow on Finance, p. 377; Eaton's Equity, p. 317.

In the Ohio case, just cited, it was held, as appears from the digest of the case in 56 Amer. Decisions: "Plaintiff suing upon a negotiable instrument or other contract made by an insane person must assume the burden of proving that it was given for necessaries or during a lucid interval, or while the insane person was apparently of sound mind and not known to be otherwise, and for property purchased by him under a fair and *bona fide* contract, and which he has received and fully enjoyed, so that the parties can no longer be put in *statu quo.*"

This being the correct principle, on the facts established by the verdict and admission of the parties, that the plaintiff, at the time, was mentally incapable of making the contract or understanding its full effect and meaning, and, under such conditions, a contract was obtained, on consideration of $150, purporting to be in full settlement for an injury amounting to $1,500, the right of plaintiff to recover is undoubted. We are not inadvertent to a verdict very similar, appearing in the *West case,* 151 N. C., 231, and to some expressions in the opinion having a tendency to declare that the facts therein established are insufficient to support the judgment; but a judge's opinion, as a rule, must be considered in reference to the facts of the case before him, and a careful perusal of the facts and the opinion in that well-sustained case will disclose that recovery was denied because there were no facts in evidence sufficient to show mental incapacity on part of plaintiff, or that defendant had any knowledge or notice of mental weakness which would disable plaintiff from taking proper and intelligent care for his own interest, or that any unfair advantage was taken of plaintiff, under facts and conditions as they reasonably appeared to both parties when the adjustment and payment was made, and this is the time by which the fairness of the transaction must be tested. See same case, 154 N. C., pp. 29 and 30.

When the $1,511.61 was paid plaintiff in that case he was apparently in perfect possession of his mental faculties and with full prospects of permanent recovery, and under all the circumstances of the case, as they then appeared, the amount given him was a fair and full allowance for the injuries received. It turned out that, unknown to defendant or plaintiff, his injuries

IPOCK *v.* R. R.

were progressive in their ill effects, and that the amount paid him was insufficient as compensation; but this should not be allowed to affect *bona fides* of the settlement, which, as stated, must be determined under conditions as they then were or as they reasonably appeared. The nonsuit was ordered in the *West case,* therefore, not on the ground that the verdict was insufficient, but that the facts in evidence were not sufficient to support the verdict.

But· no such conditions are present in the case before us, where it appears that plaintiff was injured by a blow on the back of his head, which rendered him unconscious, at the time.; that it was followed by partial paralysis; that he acted throughout with the aid of others, and that the attendant conditions were to a great extent known to defendant's agents who looked after the adjustment. While it is not established, nor is there sufficient reason to conclude that these agents had any design or purpose to circumvent plaintiff, there were sufficient facts observable to notify them that $150 was not a fair compensation for the injuries, and that· it was not improbable that plaintiff's mental capacity was affected. We hold, therefore, that plaintiff's right to recover, in the present case, must be sustained, but on the facts established and admitted that the $1,500 awarded as the full value of the plaintiff's injury should be credited with the $150 received by him or used for his benefit.

Although the authorities are to the effect that the contract, under the circumstances of the present case, is voidable at the option of the plaintiff, and it is not regarded as essential that plaintiff should restore the consideration, when it appears that he is unable to do so, the action in this aspect of the case is in the nature of an equitable proceeding to set aside the voucher or avoid the effect·of the payment had, pursuant to an adjustment between the parties, and, in the absence certainly of positive as distinguished from constructive fraud, is in no wise exempt from the wholesome maxim that he who seeks equity must do equity. This principle was fully recognized with us in the well-considered case of *Odom v. Riddick,* 104 N. C., 523, and the ruling is in accord with authoritative decisions here and elsewhere. *Creekmore v. Baxter,* 121 N. C., 31; *Coburn v. Raymond,* 76

Conn., 484; *Rea v. Bishop,* 41 Neb., 202; *Rickets v. Jolief,* 62 Miss., 440.

In the present case it appears that the $150 has been paid plaintiff on account of this injury, and same has been used by him or applied for his benefit, and the amount of the recovery being under the control of the Court, it is in accord with good reason and well-considered precedent that the amount awarded as damages for the injuries received by plaintiff should be reduced by the sum received and used by him.

The judgment will be reduced by crediting the $150 and, so modified, the recovery is affirmed.

Modified and affirmed.